Anthony Kirk Bailey
240 Beverly Hills Circle Apt. 537
Lynchburg, Va. 24502
(609) 672-6405
Plaintiff

RECEIVED

MAR 28 2019

AT 8:30_____M
WILLIAM T. WALSH
CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CIVIL ACTION

Anthony K. Bailey

**AMEND COMPLAINT**

Docket No.: 18-cv-001188 (FLW)(LHG)

Plaintiff,

-against-

NRG ENERG, INC.

AND

THE MILLENNIUM GROUP OF
DELAWARE

Defendant,

**PLAINTIFF REQUEST AMENDMENT TO COMPLAINT PURSUANT TO FED.CIV.P. 15(a)(2) AND FED.CIV.P. 16(b)(4) AND PLAINTIFF REPLY BRIEF OF FURTHER SUPPORT OF MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT NRG ENERGY, INC., MOTION TO DISMISS COMPLAINT PURSUANT TO FED.R.CIV.P. 12(b)(6) FOR FAILURE TO STATE A CLAIM**

Anthony K. Bailey
Pro Se

Plaintiff is humbly asking the court to grant his request to AMMEND his COMPLAINT pursuant to **FED.CIV.P. 15(a)(2) AND FED.CIV.P. 16(b)(4).** Plaintiff is requesting that the AMMENDED COMPLAINT include all information recorded in this MOTION, and all information within the previous MOTION submitted to the court on 02/27/2019. Plaintiff makes claim that the information submitted within the above-mentioned MOTIONS is integral to the attainment of the successful affirmation of his Complaint.

## PRELIMINARY STATEMENT

Mr. Zonghetti and defendant base their **Opposition to Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motion to Dismiss Complaint** thru the means of disingenuous verbage and a capricious interpretation of law.

Mr. Zonghetti's use of his personal unclassified language, lacking unreliable data, is a desperate attempt to attach a confounding influence upon the true language of the law. His colloquial form is an adstratum, designed and implemented to borrow lexical specifications from real language meaning and usage, in order to present and insert his false constructs into real language of law.

Plaintiff reaffirms that there was disparate treatment against him. Plaintiff reaffirms that there absolutely was disparate treatment against him, that disparate treatment had a disparate impact upon him.

**The New Jersey Law Against Discrimination, in part**:

"Effective July 1, 2018, the <u>Diane B. Allen Equal Pay Act</u> amends the New Jersey Law Against Discrimination (NJLAD) by providing enhanced equal pay protections for New Jersey employees.

<u>NJLAD</u> prohibits all public and private employers from engaging in pay discrimination on the basis of gender, race, ethnicity, military status, or national origin, in addition to other protected characteristics."

**Amendment**

"The new amendment prohibits pay disparities based upon characteristics protected by the NJLAD and specifically makes it an unlawful employment practice "for an employer to pay any of its employees who are a member of a protected class at a rate of compensation, including benefits, which is less than the rate paid by the employer to employees who are not members of the protected class for substantially similar work, when viewed as a composite of skill, effort and responsibility."

Plaintiff worked for NRG Energy, Inc., routinely as a substitute receptionist, for a minimum of to 3 hours per week sometimes more, 4 times per months, for over 24 months. Plaintiff was never paid or compensated for this employment by The Millennium group of Delaware nor by NRG Energy, Inc. There is no contractual evidence or job description anywhere between any of the parties, the Plaintiff, The Millennium Group of Delaware, or NRG Energy, Inc., to legally substantiate this undertaking. Each period of non-payment was illegal, it was disparate wages, it constituted a compensation offense, and it was non-compliance with the law, for which the new provision allows for treble damages, which means that a court could decide to triple the amount of the compensatory damages to be awarded to a prevailing plaintiff. Also, the Plaintiff may also be able to recover punitive damages if a court finds that an employer's conduct was willful, and, he Plaintiff may be able to recover treble damages if it can be shown he was discriminated against on the basis of pay. The new NJLAD amendment also increases recoverable damages and extends the statute of limitations for pay equity violations to six years. Each payment of unlawfully disparate wages or other compensation constitutes a separate offense.

3 hours per week, times 4 weeks per month, times 12 months per year, for over 2 years.

That also constitutes an employee relationship between NRG Energy, Inc., and the Plaintiff.

Mr. Zonghetti also makes the farcical statement that because Plaintiff makes claim that only he was held to a strict company policy and others were not, that the Plaintiff could not have been discriminated against because only he was held to the strict company policy? That's risible.

Again, Mr. Zonghetti is using inflection and agglutination in his morphology in an attempt to confound interpretation, meaning, and true application of the letter of law by using his own unclassified synthetic language.

## **LEGAL ARGUMENT**

Plaintiff makes claim that he has already in previous Motions established a *prima facie* case of discriminatory discharge following the framework set forth in McDonnell Douglas Corp. v. Green,411 U.S. 792 (1973).

Plaintiff makes claim that he meets the plausibility and factual clauses, and his claims are non-conclusory as stated in the framework of Ashcroft v. Iqbal 556 U.S. 662, 678 (2009).

Plaintiff makes claim that Mr. Zonghetti is attempting incorrectly apply Ethypharm S.A. France v. Abbott Laboratories, 707 F.3d 223, 231, n.14 (3d Cir. 2013).

Plaintiff makes claim that the language of NRG and Millennium Group's contract as set forth in the moving papers clearly does not and cannot legally change the meaning of consultant, and thus, that Mr. Zonghetti attempting to define consultant as meaning "employees" or "representative" does not make "consultant" mean what Mr. Zonghetti alleges it to be defined as and mean. Plaintiff makes claim that in any language but Mr. Zonghetti's unclassified language, consultant does not mean "employees' or "representatives", it means what consultant means, and defined means what "defined" means, and "employees and representatives" mean individually and respectfully what they mean.

It is a spatial proximity which creates a relationship, and an implied meaning is not a direct meaning.

To accept Mr. Zonghetti's logic is like being at a horse show and asking, "which horse is jumping", and you receive the reply, "the white one". Problem is, colors can't jump.

Again, the Plaintiff working as the NRG Front Desk Receptionist for over well over two-hundred hours, establishes a relationship between NRG and the Plaintiff.

Plaintiff makes claim that NRG was the one whom informed him that they were illegally discharging him. NRG did not wait for The Millennium Group to do so, and NRG was the one whom told The Millennium Group to also dismiss the Plaintiff from within their employment ranks, all done with out following company protocols or processes, nor the law.

Plaintiff makes claim he was employee engaged in a relationship with both NRG and The Millennium Group.

Plaintiff makes claim that, again, Mr. Zonghetti attempts to utilize his own unclassified language and apply it to the principle of law, this time in ascribing a personality to discrimination. Mr. Zonghetti incorrectly asserts that discrimination is not color blind. Discrimination does not have a racial classification, people do. Discrimination is not a member of an ethnic group people are. Discrimination does not have a cultural identity people do, and discrimination does not have a physical form or eyes to see, nor a color to be visually identifiable, people do. It is people who use discrimination to discrimination against other people, discrimination does not discriminate against anyone or anything.

This type of allegory thrives on the absence of logic and the abundance of ignorance.

Discrimination like racism, is neither visible nor tangible, it exists not in the physical body nor in a physical form, it is within the human mind that it arrives and appears, and, it is within the human mind where discrimination must be captured, corralled and controlled in order to be used and made manifest. The human mind is discrimination's instrument, and it has been proven that the human mind can be tricked, and because the human mind can be tricked it can be controlled. It is within the wrong minds where discrimination and racism are projections that acts to the desires of the beholder, and they, discrimination and racism do not care one way or the other about the consequences or the desired effects of their use.

Mr. Zonghetti further attempts to dissects the Plaintiff's claim in order to extract a portion thereof to construe a defense as it pertains to Mr. Desmond Perry, whom is an African American mailroom employee similarly situated as the Plaintiff was at NRG, in order to allege that the

Plaintiff does not refute an allegation, of which Mr. Zonghetti's usage of his unclassified language structure clouds the exactness of his argument, and promotes ambiguity and contradiction. Mr. Zonghetti also alleges that the "five Caucasian individuals are improper comparators because they were not similarly situated to the Plaintiff".

Firstly, Mr. Zonghetti does not state that the five Caucasian individuals are improper comparators because they worked for NRG and had a working relationship with NRG, and, the Plaintiff did not have a working relationship with NRG, Mr. Zonghetti implies that the five Caucasian individuals were just not similarly situated in their capacities with NRG as the Plaintiff's capacity with NRG. Mr. Zonghetti verifies this also by stating that, "NRG is not alleging that it is immune".

Secondly, as far as Mr. Desmond Perry whom Mr. Zonghetti keeps referring to as a color-black first, and all African Americans, which is inclusive of the Plaintiff whom is an African American, Mr. Zonghetti is displaying a form of subliminal neurosis carried within the morphological field and DNA of many Caucasian individuals, to refer and think of people as colors. The association of colors and their meanings and functions to people helps to substantiate class, race, and ethnic disparity.

The "good guys always wear white", and "the bad guys always wear black", "angel food cake is white, devil's food cake is black", etc. Plaintiff makes claim that this is ploy to affect the perception of the court subconsciously.

Mr. Zonghetti alleges that the Plaintiff arguments are not factual, that they are threadbare recitals, and that they are supported by mere conclusory statements, and also that the Defendants had no intentional discriminatory intent motivating their actions to discharge the Plaintiff, and that there is no meeting of the requirements to comparison between the Defendant's conduct

towards the Plaintiff and other members of the protected class on one hand, and similarly situated employees not within the protected class on the other.

That is the type of thinking justification has its roots in mass deportations and wholescale extermination, such as chattel slavery, and the holocaust of world war 2.

**The "Black Codes",** restricted the civil rights and civil liberties of African-Americans during the Reconstruction Era.

**Dred Scott v. Sandford, 60 U.S. (19 How.) 393 (1857),** was a landmark decision of the U.S. Supreme Court in which the Court held that the U.S. Constitution was not meant to include American citizenship for black people, regardless of whether they were enslaved or free, and therefore the rights and privileges it confers upon American citizens could never apply to them. White Supremacy and White Cultural Power Influence was constitutionally established in that landmark US Supreme Court decision.

White Supremacy and White Cultural Power Influence has support in law, not in mere conclusory statements.

**Plessy v. Ferguson, 163 U.S. 537 (1896),** was **a legal document in United States Constitutional Law,** and was a landmark decision of the U.S. Supreme Court issued in 1896. It upheld the **constitutionality** of racial segregation laws for public facilities as long as the segregated facilities were equal in quality – a doctrine that came to be known as **"separate but equal". The decision legitimized** the many state laws re-establishing racial segregation that had been passed in the American South after the end of the Reconstruction Era (1865–1877.

**Plessy** is widely regarded as one of the worst decisions in U.S. Supreme Court history. Despite its infamy, the decision itself has never been explicitly overruled.

White Supremacy and White Cultural Power Influence received continued support in law, not in mere conclusory statements, but by the highest law of the land.

There are those whom would have us believe that **Brown v. Board of Education of Topeka, 347 U.S. 483 (1954)**, ruled White Supremacy and White Culture Power Influence out of the US Constitution and American culture, not so. Handed down on May 17, 1954, the Court's unanimous (9–0) decision stated that "separate educational facilities are inherently unequal," and therefore violate the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution. However, the decision's 14 pages did not spell out any sort of method for ending racial segregation in schools, and the Court's second decision in **Brown II (349 U.S. 294 (1955))** only ordered states to desegregate "with all deliberate speed". The doctrine of "separate but equal" was overturned by a series of Supreme Court decisions, starting with **Brown v. Board of Education of 1954.** However, the overturning of segregation laws in the United States was a long process that lasted through much of the 1950s, 1960s, and 1970s, involving federal legislation (especially **the Civil Rights Act of 1964**), and many court cases.

At this writing, March 26, 2019, even now before the United Sates Senate and the United States House of Representatives, there is stirring discussions about Reparations for African Americans, why? Because White Supremacy and White Cultural Power Influence still exist, , if not then constitutionally African Americans would not still be in the position that their equality and their

freedom still resided in the hands of a body of a government that is still more than predominately occupied by those whom are the main beneficiaries of the White Supremacy and the White Cultural Power Influence structure.

Absolutely the Plaintiff's claim is supported by law and facts.

## CONCLUSION

For the forgoing reasons and those set forth in previous Motions, it is respectfully submitted that Plaintiff's Complaint be AMMENDED pursuant to **FED.CIV.P. 15(a)(2) AND FED.CIV.P. 16(b)(4),** and Plaintiff's Motion to oppose the dismissing of Plaintiff's Complaint be denied.

Dated: March 26, 2019

Respectfully submitted

By: _____

Anthony K. Bailey
Pro se Plaintiff